IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LATASHA PARHAM,

        Plaintiff,              No. CIV S-11-1475 LKK CKD PS

    vs.

PHILIP STEEMERS, et al.

        Defendants.      ORDER AND

    _____/  FINDINGS AND RECOMMENDATIONS

        This action for violation of 42 U.S.C. § 1983, 18 U.S.C. § 1961, and related state law tort claims arises from plaintiff's initial traffic stop and detention, as well as the subsequent related court proceedings.  Plaintiff sued the police officers involved (Steemers and Dadisho), two bailiffs that were present at a subsequent court hearing (Gaspar and Parker), as well as the judicial officers (James, Davis, Wieser, and Bennett), prosecutors (Wilson, Hakenan, and Kenney), and public defenders (Jue and Vera) involved in her state court proceedings.

        Defendants Steemers, Dadisho, Gaspar, Parker, Wilson, Hakenan, Kenney, Jue, and Vera's motions to dismiss came on regularly for hearing on October 5, 2011.  Plaintiff Latasha Parham, who is proceeding pro se, appeared on her own behalf.  Danielle Lewis appeared on behalf of defendants Steemers and Dadisho.  Kathleen Williams appeared on behalf of defendants Gaspar, Parker, Wilson, Hakenan, Kenney, Jue, and Vera.  Franklin Gumpert

1  specially appeared on behalf of the judicial officer defendants (James, Davis, Wieser, and

2  Bennett) to contest the clerk's entry of default as to these defendants.

3          Upon review of the documents in support of and in opposition to the motions,

4  upon hearing the arguments of plaintiff and counsel, and good cause appearing therefor, THE

5  COURT FINDS AS FOLLOWS:

6  BACKGROUND

7          The facts are taken from plaintiff's complaint.  On September 29, 2009, plaintiff

8  was traveling home at approximately 1:00 p.m.  Upon parking in front of her home, plaintiff

9  noticed that she had been followed for about 1 mile by a Suisun City police officer, later

10  identified as defendant Philip Steemers ("Steemers").  As plaintiff stepped out of her vehicle,

11  Steemers pulled next to her in his squad car and proceeded to question plaintiff.  Steemers

12  became irate and commanded plaintiff to return to her vehicle.  Steemers continued to demand

13  "private information" from plaintiff and eventually forced entry into her vehicle.  Steemers

14  physically removed plaintiff from her seat and called for assistance, whereupon two unidentified

15  officers also appeared at the scene.  Steemers put restraints on plaintiff's wrists and proceeded to

16  search her.  Subsequently, plaintiff was thrown in the back of Steemers's squad car and was

17  continually questioned and threatened with jail time and the confiscation of her vehicle by

18  Steemers and the other 2 unidentified officers.  Plaintiff alleges that, at that point, none of the

19  officers had yet explained to her why she was stopped.  After being held for a "duration of time,"

20  plaintiff was released on a Notice to Appear in court.  Plaintiff is African American and claims

21  that the stop and detention was the result of racial profiling.  (Plaintiff's Complaint for Civil

22  Penalties and Other Relief for Damages, Dkt. No. 1 ["Compl."] ¶ 17.)

23          On November 10, 2009, plaintiff appeared at an arraignment before defendant

24  Commissioner Barbara James ("James").  Defendant deputy district attorney Jennifer Wilson

25  ("Wilson") appeared on behalf of The People.  Plaintiff claims that she was "forced into

26  contract" with defendant public defender Michael Jue ("Jue") and that he entered a plea on her

behalf absent a verified complaint and without her consent.  While plaintiff was objecting to the plea entry, James ordered two bailiffs, later identified as Officer Gaspar ("Gaspar") and Officer Parker ("Parker") to "harass" her and intimidate her into compliance.  Plaintiff was handcuffed by Gaspar and "harassed" by Parker and Jue.  She was threatened with jail time and forced to sign a minute order, which she was allegedly not given an opportunity to read.  Plaintiff was eventually forcefully removed from the building and released.  (Compl. ¶ 18.)

Subsequently, plaintiff appeared at several court hearings involving various judicial officers (defendants Judge Richard A. Bennett ["Bennett"], Judge Pro Tem Terrye Davis ["Davis"], and Commissioner Raymond C. Wieser Jr. ["Wieser"]); prosecutors (defendants Carl Hakenan ["Hakenan"] and O'Bryan Kenney ["Kenney"]) and public defender Francisco Vera ("Vera").  Although plaintiff's allegations are somewhat confusing, her primary complaint appears to be that the court and prosecution lacked jurisdiction, because there was no verified complaint on the record and the prosecution was allowed to prosecute the case on the Notice to Appear only.  At one point, Hakenan successfully moved to dismiss two misdemeanor counts and amend them to one infraction.  Subsequently, plaintiff was provided with an amended infraction complaint, but alleges that it was not a verified complaint and contained fabricated charges.  She also claims that the prosecutors did not respond to various motions she filed, her requests for a written statement of the court's findings were denied, she was not advised of her right to be seen before a judge, court reporters were not provided for all the hearings, and the transcripts of some of the hearings were falsified to cover up events that took place during the proceedings.  (Compl. ¶¶ 19-25.)  On August 6, 2010, the charges against plaintiff were dismissed.  (Compl. ¶ 25.)

On June 1, 2011, plaintiff filed the operative complaint against defendants.  The complaint asserts eleven causes of action: (1) Violation of 42 U.S.C. § 1983 - Conspiracy; (2) Violation of 42 U.S.C. § 1983 Refusing or Neglecting to Prevent; (3) Malicious Prosecution; (4) Malicious Abuse of Process; (5) Conspiracy Against Rights; (6) Intentional Infliction of

1  Emotional Distress; (7) RICO as shown in 18 U.S.C. § 1961; (8) False Arrest; (9) False

2  Imprisonment; (10) Fraud; and (11) Assault and Battery.  The instant motions followed.

3  DISCUSSION

4  CLERK'S ENTRY OF DEFAULT AS TO JUDICIAL OFFICER DEFENDANTS

5  Counsel for defendants James, Davis, Wieser, and Bennett specially appeared at

6  the hearing to contest the clerk's entry of default as to these defendants on September 28, 2011,

7  (see dkt. no. 43), arguing that service of process on these defendants was improper.

8  The Federal Rules of Civil Procedure provide that an individual "may be served in

9  a judicial district of the United States by: (1) following state law for serving a summons in an

10  action brought in courts of general jurisdiction in the state where the district court is located or

11  where service is made...."  Fed. R. Civ. P. 4(e)(1).  California law allows for service of process

12  by mail, accompanied by copies of an appropriate notice and acknowledgment of receipt of

13  summons.  Cal. Civ. Proc. Code § 415.30(a), (b).  Service of summons "is deemed complete on

14  the date a written acknowledgment of receipt of summons is executed, if such acknowledgment

15  thereafter is returned to the sender."  Cal. Civ. Proc. Code § 415.30(c).

16  The court's records show that plaintiff's process server in Texas, Jacinda Nicole

17  Ramirez, served defendants James, Davis, Wieser, and Bennett with the summons, complaint,

18  and other case documents via certified mail on July 25, 2011.  (Dkt. No. 32.)  However, there is

19  no indication that plaintiff's server included copies of an appropriate notice and acknowledgment

20  of receipt of summons, or that these defendants signed and returned such an acknowledgment of

21  receipt.  Because plaintiff did not comply with Cal. Civ. Proc. Code § 415.30 or any of the other

22  methods of service outlined in Fed. R. Civ. P. 4(e), service of process was defective and the

23  clerk's entry of default as to these defendants should be set aside.

24  MOTIONS TO DISMISS

25  In considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim

26  upon which relief can be granted, the court must accept as true the allegations of the complaint in

4

1   question, <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007), and construe the pleading in the light

2   most favorable to the plaintiff, <u>see</u> <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).

3          To avoid dismissal for failure to state a claim, a complaint must contain more than

4   "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause

5   of action." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555-557 (2007).  In other words,

6   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

7   statements do not suffice."  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  Furthermore, a

8   claim upon which the court can grant relief must have facial plausibility.  <u>Twombly</u>, 550 U.S. at

9   570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

10  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

11  <u>Iqbal</u>, 129 S. Ct. at 1949.

12         Although the judicial officer defendants (James, Davis, Wieser, and Bennett) have

13  not joined in the other defendants' motions to dismiss, the court will nevertheless consider

14  whether plaintiff's claims against them should be dismissed.  "A District Court may properly on

15  its own motion dismiss an action as to defendants who have not moved to dismiss where such

16  defendants are in a position similar to that of moving defendants or where claims against such

17  defendants are integrally related."  <u>Silverton v. Dep't of Treasury</u>, 644 F.2d 1341, 1345 (9th Cir.

18  1981).  "Such a dismissal may be made without notice where the [plaintiffs] cannot possibly win

19  relief."  <u>Omar v. Sea-Land Serv., Inc.</u>, 813 F.2d 986, 991 (9th Cir. 1987).  The court's authority

20  in this regard includes sua sponte dismissal as to defendants who have not been served and

21  defendants who have not yet answered or appeared.  <u>Columbia Steel Fabricators, Inc. v.</u>

22  <u>Ahlstrom Recovery</u>, 44 F.3d 800, 802 (9th Cir. 1995) ("We have upheld dismissal with prejudice

23  in favor of a party which had not yet appeared, on the basis of facts presented by other defendants

24  which had appeared."); <u>see also</u> <u>Bach v. Mason</u>, 190 F.R.D. 567, 571 (D. Idaho 1999); <u>Ricotta v.</u>

25  <u>California</u>, 4 F. Supp. 2d 961, 978-79 (S.D. Cal. 1998).

26  \\\\

<u>State Law Causes of Action</u>

Plaintiff's complaint alleges the following state law causes of action: malicious prosecution (third cause of action), malicious abuse of process (fourth cause of action), conspiracy against rights (fifth cause of action), intentional infliction of emotional distress (sixth cause of action), false arrest (eighth cause of action), false imprisonment (ninth cause of action), fraud (tenth cause of action), and assault and battery (eleventh cause of action). As an initial matter, defendants argue that plaintiff's state law causes of action are barred, because plaintiff failed to comply with the claim presentation requirements of the Government Claims Act.

Under California's Government Claims Act, a plaintiff may not maintain an action against a public employee for damages resulting from an act or omission in the scope of his employment unless a written claim has first been presented to the appropriate public entity. <u>See</u> Cal. Gov't Code §§ 900.2, 910, 915(a), 945.4 & 950.2; <u>Watson v. State of California</u>, 21 Cal. App. 4th 836, 843 (1993); <u>Fisher v. Pickens</u>, 225 Cal. App. 3d 708, 718 (1990); <u>Williams v. Horvath</u>, 16 Cal. 3d 834, 838 (1976).[1] "An employee acts within the scope of his employment when he is engaged in work he was employed to perform or when an act is incident to his duty and was performed for the benefit of his employer and not to serve his own purpose...The proper inquiry is not whether the wrongful act itself was authorized but whether it was committed in the course of a series of acts of the employee which were authorized by the employer...We view scope of employment broadly to include willful and malicious torts as well as negligence." <u>Fowler v. Howell</u>, 42 Cal. App. 4th 1746, 1750-51 (1996).

"A claim relating to a cause of action for death or for injury to person or to personal property...shall be presented...not later than six months after the accrual of the cause of action." Cal. Gov't Code §911.2(a). When a claim is not presented within that time, "a written application may be made to the public entity for leave to present that claim." Cal. Gov't Code §

---

[1] Cal. Gov't Code § 905 lists certain claims that are exempt from the claim presentation requirement; none of those exceptions apply here.

911.4(a).  The application must be presented to the public entity within a reasonable time not to exceed one year after the accrual of the cause of action and must state the reason for the delay in presenting the claim.  Cal. Gov't Code § 911.4(b).  Failure to present a timely claim against the public employee bars a subsequent civil action for damages against the public employee.  See State v. Superior Ct. ex rel. Bodde, 32 Cal. 4th 1234, 1237, 1239 (2004); Padula v. Morris, 2008 WL 1970331, at *5 (E.D. Cal. May 2, 2008).

Importantly, to survive a motion to dismiss, the complaint must allege facts demonstrating or excusing compliance with the claim presentation requirement.  State v. Superior Ct. ex rel. Bodde, 32 Cal. 4th at 1243.  Although a plaintiff may include supplemental state law claims in a civil rights action brought in federal court pursuant to 42 U.S.C. § 1983, the state law claims are subject to dismissal for failure to allege compliance with the claim-filing requirement of the Government Claims Act.  Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988).

In this case, plaintiff was required to first present written claims to the appropriate public entities before bringing a civil action for damages against these employees.  First, plaintiff's state law tort claims are based on the alleged actions of various public employees (police officers, deputy sheriffs, public defenders, district attorneys, and judicial officers) involved in her initial detention and subsequent court proceedings.  (Compl. ¶¶ 4-16.)  There is no contention that these individuals were acting outside the scope of their employment or in a private capacity.  To the contrary, plaintiff specifically alleges that officer Steemers was acting "under the direction and control of the Suisun City Police Department chief of police," defendant Ed Dadisho ("Dadisho"), and that the bailiffs Gaspar and Parker were acting under the direction and control of James, a court commissioner.  (Compl. ¶¶ 37-38.)  Similarly, the prosecutors, public defenders, and judicial officers were all acting within the scope of their employment in prosecuting plaintiff, defending plaintiff, and/or presiding over plaintiff's state court case.

\\\\

1     Second, plaintiff's state law claims are clearly claims for money or damages.

2  Even though plaintiff includes what appears to be a boilerplate request for injunctive relief

3  related to some of the state law tort claims (see e.g. Compl. ¶¶ 44, 46, 50, 74), plaintiff does not

4  plausibly allege any entitlement to injunctive relief.  She is not incarcerated and all state court

5  charges against her have been dismissed.  In the prayer section of the complaint, plaintiff requests

6  that she be provided with various defendants' law licenses, oaths of office, a verified complaint,

7  a warrant, affidavits, and certain receipts.  However, she does not articulate why she would be

8  entitled to any of these "remedies" based on the state law tort claims.  Accordingly, plaintiff's

9  state law tort claims are for money or damages, and she was required to comply with the claim

10  presentation requirements.

11     Furthermore, plaintiff's complaint fails to allege any facts demonstrating or

12  excusing compliance with the claim presentation requirements.  In her opposition, plaintiff does

13  not argue that she presented the relevant public entities with valid written claims pursuant to the

14  Government Claims Act.[2]  Instead, she contends that compliance with the Government Claims

15  Act is irrelevant, because defendants are private employees.  This argument lacks merit.  The

16  California Government Code defines a "public entity" as including "the state, the Regents of the

17  University of California, the Trustees of the California State University and the California State

18  University, a county, city, district, public authority, public agency, and any other political

19  subdivision or public corporation in the State."  Cal. Gov't Code § 811.2.  A "public employee"

20  is defined as "an employee of a public entity."  Cal. Gov't Code § 811.4.  In turn, the term

21  "employee" includes an officer, judicial officer as defined in Section 327 of the Elections Code,

22  employee, or servant, whether or not compensated...."  Cal. Gov't Code § 810.2.  As such,

23

24     [2] In her response to defendants' reply briefs, plaintiff mentions that she sent a "Notice of Pending Federal Claim" to each defendant, "seeking mere justification for their actions made against Plaintiff prior to bringing this complaint to federal court."  (Plaintiff's Response, Dkt.

25  No. 41, at p. 4.)  Plaintiff gives no indication that this document provided any notice of plaintiff's state law tort claims against each defendant; nor does plaintiff argue in her briefing that this

26  document was a valid claim pursuant to the Government Claims Act.

1   defendants are clearly public employees for purposes of the Government Claims Act.  See e.g.

2   Randle v. City and County of San Francisco, 186 Cal. App. 3d 449, 455-56 (1986) (holding that

3   police officers and public prosecutors are public employees within the meaning of California's

4   Government Code); Ligda v. Superior Court, 5 Cal. App. 3d 811, 823 (1970) (holding that a

5   public defender is a public officer).

6           Because plaintiff has failed to allege compliance with the Government Claims Act

7   and essentially concedes that no written claim was presented in conformance with the Act's

8   requirements, plaintiff's state law tort claims (malicious prosecution, malicious abuse of process,

9   conspiracy against rights,[3] intentional infliction of emotional distress, false arrest, false

10  imprisonment, fraud, and assault and battery) should be dismissed without leave to amend.  In

11  light of this conclusion, it is unnecessary to consider defendants' alternative arguments for

12  dismissal of the state law causes of action.

13                  Seventh Cause of Action under RICO (18 U.S.C. § 1961)

14          Plaintiff alleges liability of all defendants under the Racketeer Influenced and

15  Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.

16          To state a cause of action under RICO, 18 U.S.C. § 1962(c), a plaintiff must

17  allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as

18  "predicate acts") (5) causing injury to plaintiff's business or property.  Living Designs, Inc. v.

19  E.I. Dupont de Nemours & Co., 431 F.3d 353, 361 (9th Cir. 2005).  In support of her RICO

20

21          [3] There is some ambiguity as to whether the fifth cause of action for conspiracy against rights is based on the state law causes of action or 42 U.S.C. §§ 1983 & 1985.  Under California

22  law, "civil conspiracies do not involve separate torts."  Choate v. County of Orange, 86 Cal. App. 4th 312, 333 (2000).  Instead, the doctrine of conspiracy "provides a remedial measure for

23  affixing liability to all persons who have agreed to a common design to commit a wrong."  Id. The court notes that the first cause of action alleges a conspiracy to deprive plaintiff of certain

24  constitutional rights in violation of 42 U.S.C. §§ 1983 & 1985.  Accordingly, the court construes the fifth cause of action for conspiracy against rights to be based on the state law causes of

25  action.  As such, it is also subject to dismissal for the reasons discussed above.  Nevertheless, any factual allegations made in the fifth cause of action for conspiracy will be considered in

26  evaluating plaintiff's first cause of action for conspiracy in violation of 42 U.S.C. §§ 1983 & 1985 to the extent those allegations may be applicable.

1    claim, plaintiff alleges that "Defendants either initiated or participated in a baseless criminal

2    proceeding and subjected Plaintiff to extortion and kidnapping.  Extortion and kidnapping are

3    predicate RICO crimes as shown in 18 U.S.C. § 1961."  (Compl. ¶¶ 58-61.)

4           Plaintiff's RICO claim fails for several reasons.  First, plaintiff fails to allege any

5    facts in support of the existence of a RICO enterprise and any predicate acts.  To be sure,

6    extortion and kidnapping are listed as predicate acts qualifying as racketeering activity.

7    However, plaintiff offers no more than conclusory allegations to show that she was subjected to

8    extortion and kidnapping.  Moreover, plaintiff has not pled any facts that establish a pattern of

9    racketeering activity by defendants.  See Religious Technology Center v. Wollersheim, 971 F.2d

10   364, 366 (9th Cir. 1992) (holding that predicate acts extending over a few weeks or months and

11   threatening no future criminal conduct are not actionable under RICO).  The facts alleged in the

12   complaint, even if accepted as true, do not support the existence of a RICO enterprise.

13          Second, plaintiff has not shown that her alleged harm qualifies as injury to her

14   business or property proximately caused by a RICO violation.  Canyon County v. Syngenta

15   Seeds, Inc., 519 F.3d 969, 972 (9th Cir. 2008).  Here, plaintiff alleges damages for "[p]ain and

16   suffering, mental anguish, emotional distress, punitive damages, and costs to RICO and 42

17   U.S.C. 1988."  (Compl. at p. 20.)  Pain and suffering, mental anguish, and emotional distress are

18   personal injuries not generally compensable under RICO.  Diaz v. Gates, 420 F.3d 897, 899-900,

19   902 (9th Cir. 2005).

20          Plaintiff's attempt to cast this action as a RICO case is deficient and amendment

21   would be futile.  Therefore, the RICO claims against all defendants should be dismissed without

22   leave to amend.

23                  First and Second Causes of Action for Violations of 42 U.S.C. § 1983

24          Before addressing the substantive allegations of plaintiff's claims under 42 U.S.C.

25   § 1983, the court first determines whether any of the defendants are immune from suit under that

26   statute.

1       Prosecutor Defendants (Wilson, Hakenan, and Kenney)

2       Wilson, Hakenan, and Kenney are Solano County deputy district attorneys.

3   (Compl. ¶¶ 10-12.)  The United States Supreme Court has held that "in initiating a prosecution

4   and in presenting the State's case, the prosecutor is immune from civil suit for damages under §

5   1983." Imbler v. Pachtman, 424 U.S. 409, 431 (1976).  Such absolute immunity applies "even if

6   it leaves the genuinely wronged defendant without civil redress against a prosecutor whose

7   malicious and dishonest action deprives him of liberty." Ashelman v. Pope, 793 F.2d 1072, 1075

8   (9th Cir. 1986).

9       Plaintiff's allegations against Wilson, Hakenan, and Kenney all arise in the

10   context of their actions as public prosecutors.  Accordingly, these defendants are immune from

11   liability under § 1983, and these claims against them should be dismissed with prejudice.

12   Because no further claims against these defendants remain, they should be dismissed from this

13   case entirely.

14       Judicial Officer Defendants (James, Davis, Wieser, and Bennett)

15       Defendants James, Davis, Wieser, and Bennett are all judges, commissioners, or

16   judges pro tem in the Solano County Superior Court.  (Compl. ¶¶ 13-16.)  "Judges are immune

17   from damage actions for judicial acts taken within the jurisdiction of their courts...Judicial

18   immunity applies however erroneous the act may have been, and however injurious in its

19   consequences it may have proved to the plaintiff." Ashelman, 793 F.2d at 1075.  "Judicial

20   immunity is not limited to judges.  All those who perform judge-like functions are immune from

21   civil damages liability." Ryan v. Bilby, 764 F.2d 1325, 1328 n.4 (9th Cir. 1985).  Because

22   plaintiff's allegations against James, Davis, Wieser, and Bennett all arise from actions taken in

23   their judicial capacity, these defendants are immune from suit.

24       Plaintiff alleges, however, that the judicial officers lacked jurisdiction, because

25   there was no verified complaint on the record during her state court proceedings, and the

26   prosecution was allowed to prosecute the case on the Notice to Appear.  A judge loses his or her

11

1    immunity when acting in clear absence of jurisdiction, but one must distinguish acts that are

2    performed in excess of a judge's authority (which remain absolutely immune) from those acts

3    taken in clear absence of jurisdiction.  Mireles v. Waco, 502 U.S. 9, 12-13 (1991).  Thus, for

4    example, in a case where a judge actually ordered the seizure of an individual by means of

5    excessive force, an act clearly outside of his legal authority, he remained immune because the

6    order was given in his capacity as a judge and not with the clear absence of jurisdiction.  Id.

7            As an initial matter, plaintiff provides no authority for the proposition that a legal

8    error, even if one were made here, would amount to an act in clear absence of jurisdiction,

9    thereby abrogating judicial immunity.  Moreover, plaintiff submitted a declaration attaching as an

10   exhibit a copy of a May 5, 2010 order of the Solano County Superior Court, which sheds some

11   light on the matter.  (See Plaintiff's Affidavit of Facts, Dkt. No. 14, Ex. C.)  The state court, in

12   rejecting plaintiff's argument regarding lack of jurisdiction, cited to People v. Barron, 37 Cal.

13   App. 4th Supp 1, 4-5 (1995), which held that where "the written notice to appear has been

14   prepared on a form approved by the Judicial Council, an exact and legible duplicate copy of the

15   notice when filed with the magistrate shall constitute a complaint to which the defendant may

16   enter a plea, i.e. a plea of guilty, a plea of nolo contendere, or a plea of not guilty."  See also Cal.

17   Veh. Code § 40513(b).

18           Accordingly, the court cannot say that defendants James, Davis, Wieser, and

19   Bennett acted in clear absence of jurisdiction.  Thus, the judicial officer defendants, like the

20   prosecutor defendants, have absolute immunity from suit.  Plaintiff's section 1983 claims against

21   these defendants should be dismissed with prejudice.  Because no further claims against these

22   defendants remain, they should be dismissed from this case entirely.

23           Bailiff Defendants (Gaspar and Parker)

24           Furthermore, defendants Gaspar and Parker, the bailiffs, are protected by quasi-

25   judicial immunity.  See Coverdell v. Department of Social & Health Services, 834 F.2d 758, 764

26   (9th Cir. 1987) (holding that persons who faithfully execute valid court orders are absolutely

1   immune from liability for damages in civil rights actions challenging conduct authorized by the

2   order); Martin v. Hendren, 127 F.3d 720, 721 (8th Cir. 1997) (holding that "bailiffs enjoy

3   absolute quasi-judicial immunity for actions specifically ordered by the trial judge and related to

4   the judicial function"). Here, plaintiff alleged that Gaspar and Parker handcuffed, detained, and

5   later escorted plaintiff out of the courthouse pursuant to Commissioner James's order. (Compl. ¶

6   18.) Having obeyed a specific judicial command to restore order in the courtroom, these

7   defendants are protected by quasi-judicial immunity. Because Gaspar and Parker played no

8   further role in plaintiff's proceedings, plaintiff's section 1983 claims against them should be

9   dismissed with prejudice. Also, as no further claims against these defendants remain, they

10  should be dismissed from this case entirely.

11                    Public Defender Defendants (Jue and Vera)

12              Because Jue and Vera were performing the traditional role of defense attorneys for

13  plaintiff in her state court proceedings, they were not state actors for purposes of section 1983

14  liability. See Polk County v. Dodson, 454 U.S. 312, 325 (1981) ("a public defender does not act

15  under color of state law when performing a lawyer's traditional functions as counsel to a

16  defendant in a criminal proceeding"); see also Miranda v. Clark County, 319 F.3d 465, 468 (9th

17  Cir. 2003).

18              Moreover, even if they were state actors, these defendants are entitled to qualified

19  immunity. Qualified immunity shields government officials from liability when their conduct

20  does not violate clearly established statutory or constitutional rights of which a reasonable person

21  would have known. Wilson v. Layne, 526 U.S. 603, 609 (1999). "Qualified immunity is an

22  entitlement not to stand trial or face the other burdens of litigation ... The privilege is an

23  immunity from suit rather than a mere defense to liability...." Johnson v. County of Los Angeles,

24  340 F.3d 787, 791 (9th Cir. 2003) (internal citations omitted) (emphasis in original). A two-step

25  analysis is ordinarily used to evaluate a claim of qualified immunity. The first step is to consider

26  whether the official's conduct violated a constitutional right. If there was a constitutional

                                            13

violation, the second step is to determine whether the official "could nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right." Id. at 791-92 (citing Saucier v. Katz, 533 U.S. 194, 201-05 (2001)).

Here, defendants Jue and Vera each only appeared once during plaintiff's court proceedings. There is absolutely no indication that they were involved with plaintiff's traffic stop and detention, or with the initiation of plaintiff's prosecution. Plaintiff's factual allegations, even if accepted as true, do not show how these defendants violated plaintiff's constitutional rights. Plaintiff's claims that these defendants were somehow part of a conspiracy to violate her constitutional rights are frivolous and entirely unsupported by any factual allegations.

Accordingly, plaintiff's claims against defendants Jue and Vera should be dismissed with prejudice. Because no further claims against these defendants remain, they should be dismissed from the case.

### Second Cause of Action for Violation of 42 U.S.C. § 1983

With potentially viable section 1983 claims remaining against defendants Steemers and Dadisho, the court next evaluates plaintiff's substantive allegations in support of such claims. To state a claim under section 1983, a plaintiff must allege that: (1) defendant was acting under color of state law at the time the complained of act was committed; and (2) defendant's conduct deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; see West v. Atkins, 487 U.S. 42, 48 (1988). Here, there is no dispute that defendants Steemers and Dadisho were acting under color of state law. Instead, the question is which constitutional rights, if any, were violated by their conduct.

Plaintiff's second cause of action is somewhat confusing. Plaintiff indicates that she demands judgment against all defendants based on this cause of action (Compl. ¶ 42). However, all the factual allegations center around the theory that Dadisho, as chief of police at the Suisun City Police Department, should be held responsible for the actions of officer Steemers

14

because Steemers was acting under his direction and control, and that he neglected or refused to prevent Steemers's conduct.[4]  Nevertheless, the court liberally construes this cause of action to assert claims for violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments under 42 U.S.C. § 1983.  (See Compl. ¶ 42.)

Plaintiff's complaint fails to state a claim under the Fifth Amendment.  The Fifth Amendment provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury ...; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

The due process clause of the Fifth Amendment, and the equal protection component thereof, has been determined to apply only to the actions of the federal government, and not to those of state or local governments.  Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001).  Because none of the defendants are federal actors, plaintiff's Fifth Amended claim fails.

Plaintiff also fails to state a claim for violation of the Eighth Amendment.  "The Eighth Amendment's prohibition of cruel and unusual punishments applies only after conviction and sentence."  Lee, 250 F.3d at 686.  In this case, plaintiff was not convicted or incarcerated, and as such, no Eighth Amendment violation can arise.

With respect to plaintiff's Fourteenth Amendment claim, it is unclear whether plaintiff alleges an equal protection or due process violation.  To the extent plaintiff attempts to state a violation of the Equal Protection Clause of the Fourteenth Amendment based on alleged racial profiling related to the traffic stop, the complaint does not contain sufficient facts to support such a claim.  "To state a § 1983 claim for violation of the Equal Protection Clause, a

---

[4] Plaintiff makes similar allegations against Commissioner James, but for the reasons outlined above, James is immune from plaintiff's section 1983 claims.

1   plaintiff must show that he was treated in a manner inconsistent with others similarly situated,

2   and that the defendants acted with an intent or purpose to discriminate against the plaintiff based

3   upon membership in a protected class." Thornton v. City of St. Helens, 425 F.3d 1158, 1166-67

4   (9th Cir. 2005).  Here, plaintiff alleges no facts in support of her claim of racial profiling except

5   that she was a victim of it with respect to Steemers's traffic stop.  She has not alleged facts

6   demonstrating intentional discrimination or differential treatment of others similarly situated.

7   Accordingly, plaintiff fails to adequately allege an Equal Protection Clause violation.

8          To the extent plaintiff attempts to state a violation of the Due Process Clause of

9   the Fourteenth Amendment related to the traffic stop and detention, that claim is improper.  All

10  constitutional claims, including excessive force claims, resulting from an arrest, investigatory

11  stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment rather

12  than under a substantive due process approach.  Graham v. O'Connor, 490 U.S. 386, 395 (1989).

13         Although it appears that plaintiff has alleged sufficient facts to support a claim for

14  violation of the Fourth Amendment against Steemers, the same cannot be said with respect to

15  defendant Dadisho.  Plaintiff includes some boilerplate formulaic recitations that Dadisho

16  "knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and

17  discipline" Steemers and that he "approved or ratified" Steemers's conduct.  (Compl. ¶ 37-41.)

18  Supervisory personnel are generally not liable under § 1983 for the actions of their employees

19  under a theory of respondeat superior and, therefore, when a named defendant holds a

20  supervisorial position, the causal link between him and the claimed constitutional violation must

21  be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v.

22  Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  Vague and

23  conclusory allegations concerning the involvement of official personnel in civil rights violations

24  are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Here, the

25  complaint is devoid of any specific factual allegations showing Dadisho's involvement or

26  participation in plaintiff's initial traffic stop and detention.  Nor has plaintiff alleged specific

1  facts indicating that Dadisho knew about the traffic stop and detention, but refused or neglected

2  to prevent it.  As such, plaintiff fails to state a claim against Dadisho.

3          Plaintiff should be given an opportunity to amend her complaint to state causes of

4  action under the Fourth Amendment and the Equal Protection Clause of the Fourteenth

5  Amendment against Steemers and Dadisho, provided she can do so in good faith.  These claims

6  should be alleged in separate causes of action and should contain specific factual allegations

7  regarding the involvement of each defendant.

8          First Cause of Action for Violation of 42 U.S.C. § 1983 - Conspiracy

9          "To state a claim for conspiracy to violate constitutional rights, the plaintiff must

10  state specific facts to support the existence of the claimed conspiracy."  Olsen v. Idaho State

11  Board of Medicine, 363 F.3d 916, 929 (9th Cir. 2004); Burns v. County of King, 883 F.2d 819,

12  821 (9th Cir. 1989).

13          Plaintiff generally alleges that "[a]s a result of their concerted, unlawful, and

14  malicious conspiracy of all Defendants, Parham was deprived of her Right to equal protection of

15  the laws, and the due course of justice was impeded, in violation of the Fourth and Fourteenth

16  Amendment of the Constitution of the United States and 42 U.S.C. § 1983 and 1985."  (Compl. ¶

17  35.)  Plaintiff also alleges that "Defendant Philip Steemers and unknown officers (non-

18  defendants) knowingly and willingly conspired against Plaintiff to maliciously search and arrest

19  Plaintiff without any crimes being committed...Co-Defendant Ed Dadisho is liable under the

20  doctrine of principal tort liability or partnership by estoppel."  (Compl. ¶ 49.)  These allegations

21  are wholly conclusory, and the complaint is devoid of any facts supporting an agreement among

22  the defendants to violate plaintiff's Fourth and Fourteenth Amendment rights.  Accordingly,

23  plaintiff fails to state a claim for conspiracy under section 1983 or 1985.

24          Plaintiff should be given leave to amend her complaint to state causes of action

25  under sections 1983 and 1985 for conspiracy to violate her Fourth and Fourteenth Amendment

26  rights against defendants Steemers and Dadisho, if she can do so in good faith.  These claims

1  should be set forth in separate causes of action.  Importantly, plaintiff should provide factual

2  allegations, instead of mere legal conclusions, that show an agreement to violate her Fourth and

3  Fourteenth Amendment rights.

4         For the reasons outlined above, IT IS HEREBY ORDERED that:

5         1.  The clerk's entry of default as to defendants James, Davis, Wieser, and Bennett

6  (Dkt. No. 43) is set aside.

7         2.  Further amendment of the complaint is not allowed until final resolution of the

8  motions to dismiss.

9         3.  Discovery in this matter shall be stayed pending final resolution of the motions

10  to dismiss.

11         4.  The Clerk shall serve a copy of this order and findings and recommendations

12  on Franklin G. Gumpert, Barkett & Gumpert, 3400 Cottage Way #Q, Sacramento, CA 95825.

13         IT IS HEREBY RECOMMENDED that:

14         1.  Defendants Gaspar and Parker's motion to dismiss (dkt. no. 6) be granted

15  without leave to amend and that these defendants be dismissed from the case with prejudice.

16         2.  Defendants Wilson, Hakenan, and Kenney's motion to dismiss (dkt. no. 7) be

17  granted without leave to amend and that these defendants be dismissed from the case with

18  prejudice.

19         3.  Defendants Jue and Vera's motion to dismiss (dkt. no. 10) be granted without

20  leave to amend and that these defendants be dismissed from the case with prejudice.

21         4.  Defendants James, Davis, Wieser, and Bennett be dismissed from the case with

22  prejudice.

23         5.  Defendants Steemers and Dadisho's motion to dismiss (dkt. no. 8) be granted

24  in part and denied in part.  Plaintiff's third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, and

25  eleventh causes of action against these defendants should be dismissed with prejudice.  Plaintiff

26  should be given leave to amend her first cause of action to allege a conspiracy to violate her

Fourth and Fourteenth Amendment rights under sections 42 U.S.C. §§ 1983 and 1985 against defendants Steemers and Dadisho.  If plaintiff elects to amend, these claims should be set forth in separate causes of action.  Plaintiffs should also be given leave to amend her second cause of action to state claims under 42 U.S.C. § 1983 for violation of the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment against Steemers and Dadisho.  If plaintiff elects to amend, these claims should likewise be set forth in separate causes of action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

 Dated: October 7, 2011

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

5
Parham.1475.mtd.wpd

19