1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   LATASHA PARHAM,

11          Plaintiff,              No. 2:11-cv-1475 CKD PS

12      vs.

13   PHILIP STEEMERS, et al.
                                ORDER
14          Defendants.

15   _____/

16          This action for damages under 42 U.S.C. § 1983 arises from a traffic stop and

17   detention of plaintiff Latasha Parham by defendant Philip Steemers and other unidentified police

18   officers from the Suisun City Police Department.[1]  Presently pending before the court is

19   defendants Philip Steemers and Ed Dadisho's motion to dismiss plaintiff's first amended

20   complaint pursuant to Fed. R. Civ. P. 12(b)(6) (dkt. no. 53), which came on for hearing before

21   the undersigned on June 27, 2012.[2]  At the hearing, plaintiff appeared pro se and Danielle Lewis

22   _____

23          [1]  Plaintiff paid the filing fee and is proceeding in this action pro se.  All parties have
     consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c)(1).  (Dkt. Nos.
     11, 48.)  Consequently, on March 21, 2012, the matter was referred to the undersigned for all
24   further proceedings and entry of final judgment.  (Dkt. No. 51.)

25          [2]  Hearing on the motion was initially noticed for June 6, 2012.  (Dkt. No. 53.)  However,
     because plaintiff failed to file an opposition or statement of non-opposition to the motion in
26   accordance with E.D. Cal. L.R. 230, the court continued the hearing to June 27, 2012 and
     provided plaintiff with a final opportunity to file an opposition by June 13, 2012.  (Dkt. No. 54.)
     Plaintiff then filed an opposition on June 13, 2012, and defendants filed a reply brief on June 20,

1   appeared on behalf of defendants.  After considering the papers in support of and in opposition to

2   the motion, the court's record in this matter, the parties' oral argument, and the applicable law,

3   the court now issues the following order.

4   BACKGROUND

5                     Facts Giving Rise to the Litigation

6                     The background facts are taken from plaintiff's first amended complaint.  (See

7   First Amended Complaint, Dkt. No. 52 ["FAC"].)  On September 29, 2009, plaintiff was

8   traveling home in her vehicle.  (FAC ¶ 7.)  According to plaintiff, defendant Philip Steemers, a

9   police officer with the Suisun City Police Department, made a U-turn and followed plaintiff for

10  approximately one mile without turning on his emergency lights.  (FAC ¶¶ 4, 8-9, 36.)  Once

11  plaintiff parked in front of her home and stepped out of her vehicle, Steemers pulled up directly

12  beside plaintiff's vehicle, trapping plaintiff between his vehicle and her own.   (FAC ¶¶ 10-11.)

13  Plaintiff alleges that Steemers was irate and immediately began yelling at plaintiff, demanding

14  that she return to her vehicle.  (FAC ¶ 12.)  Fearing for her safety, plaintiff complied.  (FAC ¶

15  13.)  Steemers then reversed his vehicle, parked behind plaintiff's vehicle, and approached

16  plaintiff's car window on foot.  (FAC ¶ 14-15.)

17                     At that time, Steemers demanded plaintiff's "private information."  (FAC ¶ 15.)

18  When plaintiff asked Steemers to explain the nature of her seizure, Steemers refused to answer

19  and continued to demand to see her "papers."  (FAC ¶ 16-17.)  Steemers ordered plaintiff to exit

20  her vehicle; he pulled on plaintiff's door handle, but it was locked.  (FAC ¶ 18.)  Steemers then

21  called for backup.  (FAC ¶ 19.)  When plaintiff rolled down her window, Steemers reached

22  inside plaintiff's vehicle, unlocked and opened the door, and forcefully pulled plaintiff out of her

23  vehicle by her left arm.  (FAC ¶ 20-21.)  Thereafter, Steemers frisk searched plaintiff including

24  her breast area and between her legs, placed his hands into her pockets, and removed her hat,

25  _____

26  2012.  (Dkt. Nos. 55, 56.)

1    whereupon he forced plaintiff's arms behind her back and handcuffed her.  (FAC ¶ 22-23.)

2            Around this time, two unidentified officers arrived on the scene in separate squad

3    cars.  (FAC ¶ 24.)  After plaintiff informed Steemers that she did not consent to a search of her

4    vehicle, she was forced into and confined to the back seat of Steemers's squad car, and her

5    wallet, which had fallen out of her lap when she was pulled from her vehicle, was confiscated.

6    (FAC ¶¶ 25-28.)  Steemers then met with the other two arriving officers, and the three of them

7    questioned plaintiff and threatened to take her to jail and confiscate her vehicle if she did not

8    submit to a search of her vehicle so that her insurance card could be removed.  (FAC ¶¶ 27, 29.)

9    As a result, plaintiff "under duress" consented to a search of her glove box.  (FAC ¶ 30.)

10           When plaintiff informed one of the unidentified officers, who introduced himself

11   as a supervisor, that she did not know why she was stopped, was exercising her right to travel,

12   and wanted to be released from custody, the supervisor maintained that Steemers was not

13   required to explain why he was "arresting" plaintiff and that she would not be released "until

14   Defendant Steemers said so."  (FAC ¶¶ 31, 32.)  After "an unknown amount of time," plaintiff

15   was told that she would be released and not taken to jail if she signed a traffic citation.  (FAC ¶

16   33.)  Throughout the incident, plaintiff was never told why she was stopped, searched, and

17   "arrested."  (FAC ¶ 34.)  Only when the traffic citation was issued did plaintiff learn that she was

18   cited with reckless driving and failure to identify.  (FAC ¶¶ 34, 35.)

19           Subsequently, Steemers filed a "notice to appear in court" and initiated a

20   "criminal action" against plaintiff, which plaintiff claims was pursued "absent probable cause

21   and evidence that a crime had been committed, was being committed, or was going to be

22   committed, absent a warrant for [p]laintiff's arrest, absent a verified complaint which [p]laintiff

23   demanded in writing, absent a party with legal standing to sue, and before a court absent of

24   jurisdiction," resulting in emotional distress to plaintiff.  (FAC ¶¶ 38-40.)  Around August 6,

25   2010, a court commissioner dismissed the notice to appear and "criminal action" against plaintiff

26   "in the interest of justice."  (FAC ¶ 41.)

1        Thereafter, around August 13, 2010, plaintiff mailed a "notice of a pending

2   federal action" and events giving rise to her grievances to all parties involved in her initial

3   "arrest" through dismissal of the state action.  (FAC ¶ 42.)  Plaintiff mailed this same notice to

4   defendant Ed Dadisho, the chief of police of the Suisun City Police Department, but Dadisho

5   never responded.  (FAC ¶¶ 5, 43, 44.)

6        <u>Procedural History</u>

7        Plaintiff filed her original complaint on June 1, 2011 asserting eleven causes of

8   action and naming numerous defendants – defendants Steemers and Dadisho, as well as two

9   bailiffs, two public defenders, three prosecutors, and four state court judges/commissioners that

10  were involved in the eventually-dismissed state court action.  (Dkt. No. 1.)  An initial round of

11  motions to dismiss followed, and the court ultimately dismissed all defendants from the action

12  with prejudice, except for defendants Steemers and Dadisho.  (Dkt. Nos. 45, 49.)  The court also

13  dismissed most of plaintiff's claims with prejudice, except that plaintiff was given leave to

14  amend her complaint to state claims under 42 U.S.C. § 1983 for violation of the Fourth

15  Amendment and Equal Protection Clause of the Fourteenth Amendment against Steemers and

16  Dadisho, and to state claims under 42 U.S.C. §§ 1983 and 1985 for conspiracy to violate

17  plaintiff's Fourth and Fourteenth Amendment rights against Steemers and Dadisho.  (<u>Id</u>.)

18       On April 16, 2012, plaintiff filed the operative first amended complaint containing

19  five causes of action: (1) violation of civil rights under 42 U.S.C. § 1983 against Steemers; (2)

20  conspiracy to interfere with rights under 42 U.S.C. § 1983 against Steemers; (3) malicious

21  prosecution under 42 U.S.C. § 1983 against Steemers; (4) supervisory liability under 42 U.S.C. §

22  1983 against Dadisho; and (5) failure to train under 42 U.S.C. § 1983 against Dadisho.  (Dkt. No.

23  52.)  Thereafter, defendants Steemers and Dadisho filed the instant motion to dismiss.  (Dkt. No.

24  53.)

25  \\\\

26  \\\\

DISCUSSION

In considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and construe the pleading in the light most favorable to the plaintiff, see Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). However, to avoid dismissal for failure to state a claim, a complaint must contain more than "naked assertions," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Furthermore, a claim upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. With these principles in mind, the court now turns to an analysis of each of plaintiff's claims.

First Cause of Action: Violation of Civil Rights under 42 U.S.C. § 1983 against Steemers

Based on the factual allegations outlined above, the court finds that the first amended complaint adequately states a 42 U.S.C. § 1983 claim against Steemers for violation of plaintiff's Fourth Amendment rights under three theories – unlawful detention or seizure, unlawful search, and excessive force. Plaintiff alleges sufficient facts to support a reasonable inference that she was detained/seized, that her person and property were searched, and that Steemers acted with excessive force, especially given her allegations that she had not committed any crime, did not pose a threat, and did not actively resist. (FAC ¶¶ 50-56.) Indeed, defendants conceded in their briefing and at oral argument that this claim is sufficiently pled to survive a motion to dismiss. (See Dkt. No. 53-1 at 8.)

\\\\\

1          Instead, defendants contend that the first cause of action also purports to state an

2    improper claim under the Fourteenth Amendment.  However, plaintiff's only reference to the

3    Fourteenth Amendment in the first cause of action is paragraph 48, which correctly notes that the

4    Fourth Amendment is made applicable to the states by the Fourteenth Amendment.[3]  The court

5    does not construe this statement as an attempt by plaintiff to raise a Fourteenth Amendment

6    claim in the first cause of action, which solely relates to alleged Fourth Amendment violations.

7          Nevertheless, plaintiff does make passing references to violations of the

8    Fourteenth Amendment elsewhere in the first amended complaint.  (See e.g. FAC ¶¶ 60, 66, 92.)

9    To the extent plaintiff attempts to state a claim for violation of the Due Process Clause of the

10   Fourteenth Amendment, that claim was previously dismissed with prejudice.  (Dkt. Nos. 45, 49.)

11   Moreover, as the court previously explained, all constitutional claims, including excessive force

12   claims, resulting from an arrest, investigatory stop, or other seizure of a free citizen should be

13   analyzed under the Fourth Amendment rather than under a substantive due process approach.

14   Graham v. O'Connor, 490 U.S. 386, 395 (1989).  Although plaintiff was given leave to amend to

15   state a claim for violation of the Equal Protection Clause of the Fourteenth Amendment, plaintiff

16   elected not to do so.  Accordingly, for the sake of clarity and to the extent that they are not

17   already dismissed with prejudice, plaintiff's claims for violation of the Fourteenth Amendment

18   will be dismissed with prejudice as noted below.

19          Second Cause of Action: Conspiracy to Interfere with Rights under

20   42 U.S.C. § 1983 against Steemers

21          As the court previously noted when recommending dismissal of plaintiff's

22   conspiracy claim with leave to amend, to state a claim for conspiracy under 42 U.S.C. § 1983,

23   plaintiff must plead specific facts showing an agreement or meeting of minds between the

24   _____

25          [3] The Due Process Clause of the Fourteenth Amendment incorporates most of the Bill of
     Rights (including most provisions of the First, Fourth, Fifth, Sixth, and Eighth Amendments) and
     makes it applicable to the states and local governments.  See Planned Parenthood of Southeastern
26   Pa. v. Casey, 505 U.S. 833, 847 (1992); Oliver v. United States, 466 U.S. 170, 187 (1984).

1 | defendants to violate her constitutional rights.  <u>Woodrum v. Woodward Cty.</u>, 866 F.2d 1121,

2 | 1126 (9th Cir. 1989); <u>see</u> <u>also</u> <u>Olsen v. Idaho State Board of Medicine</u>, 363 F.3d 916, 929 (9th

3 | Cir. 2004); <u>Burns v. County of King</u>, 883 F.2d 819, 821 (9th Cir. 1989).  Plaintiff must also show

4 | how an actual deprivation of her constitutional rights resulted from the alleged conspiracy.  <u>Id.</u>

5 | Because a conspiracy claim under 42 U.S.C. § 1983 requires proof of subjective intent, it is

6 | subject to a heightened pleading standard.  <u>Turner v. County of Los Angeles</u>, 18 Fed. App'x 592,

7 | 596 (9th Cir. 2001) (citing <u>Branch v. Tunnell</u>, 937 F.2d 1382, 1386 (9th Cir. 1991) and <u>Buckey</u>

8 | <u>v. County of Los Angeles</u>, 968 F.2d 791, 794 (9th Cir. 1992)).

9 |       Here, plaintiff alleges that the unidentified officers "were aware that Defendant

10 | Steemers planned to deprive Plaintiff of her Fourth and Fourteenth Amendment right guaranteed

11 | by the U.S. Constitution and to violate her Fifth Amendment right to the exercise of travel..." and

12 | that "Defendants Steemers and the unidentified officers agreed with one another, implied by their

13 | conduct, and intended to commit violations against Plaintiff's rights."  (FAC ¶¶ 60, 61.)  These

14 | allegations by themselves are wholly conclusory and essentially amount to a formulaic recitation

15 | of the elements of a conspiracy claim.

16 |       Furthermore, the facts outlined in the "Statement of Facts" portion of the first

17 | amended complaint, incorporated into this cause of action by reference, also do not support a

18 | reasonable inference of an agreement between Steemers and the unidentified officers to violate

19 | plaintiff's constitutional rights.  Although plaintiff alleges that two unidentified officers,

20 | including a supervisor, were later called to the scene by Steemers, participated in her questioning

21 | and detention, and "neglected to intervene" on her behalf, these facts do not permit a reasonable

22 | inference of an agreement or common intent to violate her constitutional rights.  Plaintiff alleges

23 | no facts plausibly suggesting that the unidentified officers were aware of the events prior to their

24 | arrival on the scene.  To the contrary, according to plaintiff, the unidentified officers arrived in

25 | separate squad cars after Steemers had already stopped, detained, frisked, and handcuffed

26 | plaintiff, whereupon they were presumably provided with Steemers's account of the events up to

1   that point in time.  Thus, the unidentified supervisor's deference to Steemers's decisionmaking as

2   the first officer on the scene is not indicative of a conspiracy.  Additionally, plaintiff entirely fails

3   to explain how the later-arriving officers were "aware that Defendant Steemers planned to

4   deprive [her] of her constitutional rights" or articulate any facts plausibly suggesting that

5   "Defendant Steemers and the unidentified officers agreed with one another, implied by their

6   conduct, and intended to commit violations against Plaintiff's rights."  (Dkt. No. 55 at 5, ¶ 21.)

7           To be sure, the court has concluded, for purposes of this motion to dismiss, that

8   plaintiff alleged sufficient facts to suggest that Steemers violated her Fourth Amendment rights.

9   However, plaintiff has not pled specific facts, direct or circumstantial, showing an *agreement or*

10  *meeting of minds between the unidentified officers and Steemers* to violate her constitutional

11  rights.  Because plaintiff was previously advised of the requirements to plead a conspiracy claim,

12  but failed to cure the identified deficiencies upon being granted leave to amend, the court

13  concludes that further leave to amend would be futile.  Plaintiff's opposition also provides no

14  additional facts suggesting that the claim can be cured by further amendment.  Therefore,

15  plaintiff's conspiracy claim under 42 U.S.C. § 1983 against Steemers will be dismissed with

16  prejudice.

17          Third Cause of Action: Malicious Prosecution under 42 U.S.C. § 1983 against

18  Steemers

19          In her third cause of action, plaintiff essentially alleges that, by filing the notice to

20  appear in court, Steemers initiated a baseless criminal action against plaintiff.  The court

21  previously dismissed plaintiff's state law tort claims, including plaintiff's claim for malicious

22  prosecution, with prejudice for failure to comply with California's Government Claims Act.

23  (Dkt. No. 45 at 6-9; Dkt. No. 49.)  Plaintiff's present argument that dismissal was improper

24  under Williams v. Horvath, 16 Cal. 3d 834 (1976) is without merit, because that case merely held

25  that the Government Claims Act did not apply to claims under 42 U.S.C. § 1983.  Malicious

26  prosecution is ordinarily a state law claim, and plaintiff's original complaint and opposition filed

1  in regard to the prior motions to dismiss entirely failed to invoke 42 U.S.C. § 1983 with respect

2  to her malicious prosecution claim.  (See Dkt. No. 1 at 14 [containing no reference to 42 U.S.C. §

3  1983]; see also dkt. no. 13.)  Accordingly, there is no justifiable reason to revisit that decision.[4]

4          Although plaintiff now purports to assert a malicious prosecution claim under 42

5  U.S.C. § 1983 in the first amended complaint, she was not granted leave to amend to state such a

6  claim.  The court's prior order specifically only granted plaintiff leave to amend her complaint to

7  state claims under the Fourth Amendment and Equal Protection Clause of the Fourteenth

8  Amendment, as well as a claim for conspiracy, against Steemers and Dadisho.  (Dkt. Nos. 45,

9  49.)  For this reason alone, the claim should be dismissed.

10         Moreover, even assuming *arguendo* that a malicious prosecution claim under 42

11  U.S.C. § 1983 is cognizable here and that plaintiff were permitted leave to assert it, such a claim

12  lacks merit in this case, because plaintiff failed to show that the underlying proceeding resulted in

13  a favorable termination reflecting the merits of the action and plaintiff's innocence of the

14  misconduct.

15              To establish a cause of action for the tort of malicious prosecution,
                plaintiff must show the prior action was commenced by or at the
16              defendant's direction and pursued to a termination in plaintiff's
                favor, it was brought without probable cause, and it was initiated
17              with malice...The element of "favorable termination" requires a
                termination reflecting the merits of the action and plaintiff's
18              innocence of the misconduct.  The theory underlying the
                requirement of favorable termination is that it tends to indicate the
19              innocence of the accused...Where a proceeding is terminated other
                than on the merits, the reasons underlying the termination must be

20

21         [4] At the hearing, plaintiff also requested the court to rule on defendants' purported
    objections to exhibits she submitted along with her affidavit filed on July 7, 2011 in opposition
22  to the previous round of motions to dismiss.  (Dkt. No. 14.)  These exhibits were orders, filings,
    and transcripts of hearings related to the state court action.  (Id.)  To the extent defendants
23  objected to the court's consideration of these materials, the court overruled such objections,
    because the court specifically reviewed all of plaintiff's materials in opposition to the prior
24  motions to dismiss to determine whether she could plausibly amend her complaint to cure any
    defective claims.  Reconsideration of the court's previous order on the initial round of motions to
25  dismiss is not presently before the court.  However, even if it were, a further review of the
    referenced exhibits does not reveal any grounds for amending or altering the court's previous
26  findings and order.

examined to see if the termination reflects the opinion of either the court or the prosecuting party that the action would not succeed. Thus plaintiff must establish more than that he prevailed in the underlying action. He must prove a termination that reflects on his innocence. *If the resolution of the underlying action leaves some doubt concerning plaintiff's innocence or liability, it is not a favorable termination sufficient to allow a cause of action for malicious prosecution.*

Pattiz v. Minye, 61 Cal. App. 4th 822, 826-27 (1998) (emphasis added) (internal citations and quotations omitted).

Here, the first amended complaint does not sufficiently allege whether the state court action resulted in a favorable termination reflecting the merits of the action and plaintiff's innocence. Nevertheless, the court reporter's transcript attached to plaintiff's present opposition brief indicates that the state action against plaintiff was dismissed because the prosecutor failed to provide plaintiff with requested discovery, failed to file a verified complaint as ordered by the court, and failed to respond to plaintiff's motions. The prosecutor also indicated that, due to the obligations of his office, he did not have time to respond to the "number of motions" filed by plaintiff. (Dkt. No. 55 at 28-39.) The state court judge was dissatisfied by the prosecutor's actions and consequently dismissed the case in the interest of justice. However, the ruling made no findings concerning the merits of the charges or plaintiff's innocence. Instead, it is clear that the dismissal was based on procedural violations by the prosecutor and not on the substance of the charges against plaintiff. Therefore, it is insufficient to support a cause of action for malicious prosecution, whether under state law or under 42 U.S.C. § 1983. Because this claim is fatally deficient, it will be dismissed with prejudice.

In the third cause of action, plaintiff also refers to several other alleged constitutional violations resulting from the purported malicious prosecution, in particular, violations of her Fourth, Fifth, Sixth, and Fourteenth Amendment rights.[5] Plaintiff fails to

---

[5] Plaintiff also claims that Steemers violated the Separation of Powers doctrine when she alleges, in conclusory fashion, that he acted in a "prosecutorial role" when he appeared in court

1    plausibly allege a violation of her Fourth Amendment rights outside of the context of the traffic

2    stop and detention.  Plaintiff does not allege that she was subsequently detained or incarcerated

3    during the pendency of her state court proceedings.  Furthermore, any claim based on the Due

4    Process Clause of the Fifth Amendment should be dismissed, because it applies only to actions of

5    the federal government.  Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001).

6    Plaintiff's Fifth Amendment claims were also previously dismissed with prejudice.  (Dkt. Nos.

7    45, 49.)  Additionally, to the extent plaintiff contends that her "right to travel" and right to liberty

8    under the Fourteenth Amendment were violated, this claim should be dismissed for the reasons

9    discussed above.  See Graham v. O'Connor, 490 U.S. 386, 395 (1989).

10          Finally, plaintiff's claim that her Sixth Amendment rights were violated because

11   she was not "informed of the nature and cause of the accusation" lacks merit, because she alleged

12   that she was cited with reckless driving and failure to identify.  (FAC ¶¶ 34, 35.)  Even though

13   plaintiff alleges that the prosecutors later failed to provide and file a verified complaint (as

14   opposed to the notice to appear and/or citation), plaintiff fails to explain how this prosecutorial

15   inaction can be imputed to Steemers, and the court has already found that the former prosecutor

16   defendants are immune from liability.  Moreover, no trial was ultimately conducted and the

17   charges were dismissed.

18          Therefore, to the extent they have not already been dismissed with prejudice, any

19   claims under 42 U.S.C. § 1983 for violation of the Fourth Amendment (other than those in the

20   first cause of action based on the traffic stop and detention), Fifth Amendment, Sixth

21   Amendment, and Fourteenth Amendment will be dismissed with prejudice.

22   \\\\\

23

24   as a representative of the People of the State of California.  (FAC ¶¶ 65-66.)  The Separation of
     Powers doctrine involves separation of the three government branches – legislative, executive,
25   and judicial.  Police officers and prosecutors are all part of the executive branch.  As such, it is
     unclear how the Separation of Powers doctrine can be invoked in this context or whether plaintiff
26   even has standing to raise such a claim.

<u>Fourth and Fifth Causes of Action: Supervisory Liability Against Dadisho</u>

1

2        As the court previously noted, supervisory personnel are generally not liable under

3 § 1983 for the actions of their employees under a theory of respondeat superior and, therefore,

4 when a named defendant holds a supervisory position, the causal link between him and the

5 claimed constitutional violation must be specifically alleged.  <u>See Fayle v. Stapley</u>, 607 F.2d 858,

6 862 (9th Cir. 1979); <u>Mosher v. Saalfeld</u>, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and

7 conclusory allegations concerning the involvement of official personnel in civil rights violations

8 are not sufficient.  <u>See Ivey v. Board of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982).  Recently,

9 the Ninth Circuit again emphasized that the pleading of supervisory liability is subject to the

10 <u>Iqbal</u> standards.  <u>Chavez v. United States</u>, 2012 WL 2334124 (9th Cir. Jun. 20, 2012).

11        Here, even assuming that Steemers violated plaintiff's Fourth Amendment rights,

12 plaintiff fails to allege any facts suggesting that Dadisho was at the scene of the traffic stop and

13 detention, that he personally participated in it, that he ordered or authorized it, or that he knew

14 about it and failed to prevent it.  Indeed, plaintiff only alleges that she informed Dadisho about

15 the incident *after the fact* when she served him with an outline of the events and he failed to

16 respond.

17        Plaintiff's fourth cause of action asserts that Dadisho's failure to respond to her

18 complaint amounted to "deliberate indifference to, or tacit authorization of Defendant Steemers'

19 conduct...."  This statement is wholly conclusory.  Indeed, plaintiff does not even allege that

20 Dadisho actually failed to investigate the incident or that he failed to discipline Steemers –

21 merely that he did not respond to her complaint and outline of events.  However, even if the

22 claim were liberally construed to assert that Dadisho failed to investigate the incident in violation

23 of plaintiff's Due Process rights under the Fourteenth Amendment, plaintiff provides no authority

24 for the proposition that she has a valid property interest[6] in, or an entitlement to, an internal

25

26      [6] It seems clear that no life or liberty interest can be reasonably invoked with respect to an internal investigation.

1   investigation by Dadisho.  The court is unaware of any federal law governing the internal

2   disciplinary affairs of a city police department, and plaintiff does not even point to any particular

3   state law addressing the matter.

4           Moreover, even if state law does somehow create an entitlement to an internal

5   investigation, that does not mean that it constitutes a property interest for purposes of the Due

6   Process Clause.  See Town of Castle Rock v. Gonzalez, 545 U.S. 748, 766 (2005) (holding that a

7   plaintiff did not have a property interest under the Due Process Clause in police enforcement of a

8   restraining order against her husband).  As the U.S. Supreme Court noted in Town of Castle

9   Rock with respect to enforcement of restraining orders, the performance of an internal

10  investigation does not "resemble any traditional conception of property," does not "have some

11  ascertainable monetary value," and has only an indirect and incidental effect on plaintiff.  Town

12  of Castle Rock, 545 U.S. at 766-68.  The primary focus of such an investigation would obviously

13  be the internal discipline of the police officer(s) involved.  Even though the consequences of the

14  police's failure to enforce the restraining order in Town of Castle Rock were dire, resulting in the

15  death of that plaintiff's children, the U.S. Supreme Court nonetheless found the benefit to the

16  plaintiff of the restraining order's enforcement to be too indirect and incidental to constitute a

17  property interest under the Due Process Clause.  Id. at 767-68.  Therefore, the court concludes

18  that plaintiff does not have a protected property interest in an internal investigation of her

19  complaint for purposes of the Due Process Clause of the Fourteenth Amendment.  In short,

20  plaintiff's dissatisfaction with Dadisho's response does not a constitutional claim make.

21          Finally, in her fifth cause of action, plaintiff claims that Steemers's inadequate

22  training was a substantial factor in causing the deprivation of her constitutional rights.  She

23  contends that Dadisho, as chief of police, knew that the alleged inadequate training was likely to

24  result in constitutional violations, because a Grand Jury in 2007-2008 found that several areas of

25  the Suisun City Police Department's training, including "arrest and control," "driver training,"

26  and "racial profiling," were deficient.

13

As an initial matter, plaintiff's allegations regarding the areas of deficient training are very vague.  Only the "arrest and control" area of training conceivably applies to the context of this case, and plaintiff fails to articulate specific facts regarding how the training was allegedly deficient and how the specific deficiency caused the alleged constitutional violations.  Moreover, the court notes that plaintiff is not bringing a municipal liability claim against the city under Monell v. New York City Dep't of Social Services, 436 U.S. 658 (1978), but instead seeks to hold Dadisho liable in his individual capacity.  The Ninth Circuit has acknowledged that "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training...of his subordinates...." Starr v. Baca, 652 F.3d 1202, 1208 (9th Cir. 2011).  However, plaintiff here fails to allege whether and how Dadisho was involved in designing the police department's training program or in training Steemers.  While Dadisho is alleged to be the chief of police, there are no facts suggesting that he was directly involved with the training program, that he failed to take steps to remedy the deficiencies highlighted by the Grand Jury in 2007-2008, or that he was deliberately indifferent to any training deficiencies.

As such, the failure-to-train claim against Dadisho is speculative, conclusory, and lacks the factual specificity required under Iqbal.  The facts alleged by plaintiff in this case relate to a specific incident involving a specific police officer(s) as opposed to a pervasive problem with a *particular* police department policy or training deficiency for which Dadisho is responsible.  For this reason, and because plaintiff has already been provided with an opportunity to cure this claim and failed to do so, the court concludes that further amendment would be futile and that dismissal with prejudice is warranted at this juncture.  Because no claims against Dadisho remain, he will be dismissed from the case.

CONCLUSION

For the reasons outlined above, plaintiff will be permitted to proceed with her claim against Steemers under 42 U.S.C. § 1983 for violation of the Fourth Amendment under theories of unlawful detention or seizure, unlawful search, and excessive force, as alleged in the

first cause of action.  Plaintiff's remaining claims will be dismissed with prejudice.

        Accordingly, IT IS HEREBY ORDERED that:

        1.  Defendants' motion to dismiss (dkt. no. 53) is GRANTED IN PART.

        2.  Plaintiff's second cause of action for conspiracy to interfere with rights under 42 U.S.C. § 1983 against Steemers; third cause of action for malicious prosecution under 42 U.S.C. § 1983 against Steemers; fourth cause of action for supervisor liability under 42 U.S.C. § 1983 against Dadisho; fifth cause of action for failure to train under 42 U.S.C. § 1983 against Dadisho; and plaintiff's other claims for violation of the Fourth, Fifth, Sixth, and Fourteenth Amendment, as well as the Separation of Powers Doctrine, contained in these causes of action are DISMISSED WITH PREJUDICE.

        3.  Defendant Dadisho is DISMISSED from the action.

        4.  Defendant Steemers shall file an answer to plaintiff's remaining first cause of action under 42 U.S.C. § 1983 for violation of the Fourth Amendment within fourteen (14) days of this order.

        5.  Within 28 days of this order, the parties shall conduct a discovery planning conference pursuant to Fed. R. Civ. P. 26(f).

        6.  A status (pre-trial scheduling) conference in this matter is set for August 22, 2012 at 10:00 a.m. in Courtroom No. 26 before the undersigned.  Not later than seven (7) days prior to the conference, the parties shall file a joint status report addressing the topics outlined in the court's June 1, 2011 order setting status conference (see dkt. no. 3 at 2-3).  The joint status report shall also specifically indicate whether the parties consent to referral to the court's Voluntary Dispute Resolution Program ("VDRP").

 Dated: June 28, 2012

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

CKD/5 - Parham.1475.mtd2.wpd